UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KATHRYN FORREST :
:
Plaintiff, :
:
VS.. : C.A. No.:  1:18-cv-00041
:
WELLS FARGO BANK, N.A. AS TRUSTEE :
FOR OPTION ONE MORTGAGE LOAN :
TRUST 2007-2, ALIAS :
OCWEN LOAN SERVICING, LLC :
:
Defendants. :

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Defendants Wells Fargo Bank, National Association as Trustee for Option One Mortgage

Loan Trust 2007-2, Asset-Backed Certificates, Series 2007-2[1] ("Wells Fargo as Trustee") and

Ocwen Loan Servicing, LLC ("Ocwen") (collectively "Defendants") submit this memorandum

of law in support of their *Motion to Dismiss* the complaint ("*Complaint*") of plaintiff Kathryn

Forrest ("Ms. Forrest" or "Plaintiff"), pursuant to *Federal Rule of Civil Procedure* 12(b)(6).  The

*Complaint* fails to allege facts sufficient to state a claim for relief against any of the Defendants.

Plaintiff's suggestion that standing to foreclose is lacking fails under well-established

Rhode Island law because Wells Fargo as Trustee is the mortgagee of record and the Plaintiff

herself lacks standing to challenge the assignments to Wells Fargo as Trustee.  Further, Wells

Fargo as Trustee's exercise of the power of sale is well within the statutory period.  As a result,

all claims are subject to dismissal.

---

[1] Improperly pleaded as Wells Fargo Bank, N.A. as Trustee for Option One Mortgage Loan Trust
2007-2 Asset-Backed Certificates Series 2007-2.

In addition, the *Complaint* fails to adequately plead a claim for damages sufficient to provide standing for a statutory violation under either the Truth in Lending Act ("TILA") or the Rhode Island Fair Debt Collection Practices Act ("RI-FDCPA"). The Plaintiff's claims should be dismissed under Rule 12(b)(1) for lack of standing and/or Rule 12(b)(6) for failing to plead sufficient facts to establish a cause of action.

For these reasons, explained in detail below, Defendants respectfully request that judgment be entered in their favor and that the *Complaint* be dismissed in its entirety.

## STATEMENT OF FACTS

The following facts are alleged in the *Complaint* or set forth in "documents the authenticity of which are not disputed by the parties, official public records, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint." *See Wilborn v. Walsh*, 584 F. Supp. 2d 384, 386 (D. Mass. 2008) (quoting *Watterson v. Page*, 897 F.2d 1, 3-4 (1st Cir. 1993)). The facts, as set forth herein, are, as they must be, taken in the light most favorable to Plaintiff for the purpose of Defendants' *Motion to Dismiss*, but are neither admitted nor denied by way of this filing by Defendants.

## I.   THE SUBJECT MORTGAGE LOAN.

Plaintiff and her husband John Forrest ("Mr. Forrest") acquired title to real estate located at 106 High Street, Bristol, Rhode Island (the "Property") by a deed recorded on July 29, 1994 in the Bristol Land Evidence Records in Book 523 at Page 284. On or about November 3, 2006, Ms. Forrest and Mr. Forrest executed a promissory note in the principal amount of $512,000 in favor of Option One Mortgage Corporation ("Option One") to evidence a loan of event amount (the "*Note*"). *Compl.* ¶ 3; *see also*, Exhibit A hereto. On the same date, as security for repayment of the *Note*, Ms. Forrest and Mr. Forrest granted a mortgage lien (the "*Mortgage*") in

favor of Option One encumbering the Property for the same amount pledged to be repaid under the *Note*. *Compl.* ¶ 2; *see also*, Exhibit B hereto. On May 22, 2009, Sand Canyon Corporation ("Sand Canyon") (formerly known as Option One) assigned the Mortgage to American Home Mortgage Servicing, Inc. ("AHMSI"). *Compl.* ¶ 12; *see also*, Exhibit C hereto. On November 18, 2009, AHMSI assigned the *Mortgage* back to Sand Canyon and on the same date, Sand Canyon assigned the *Mortgage* to Wells Fargo as Trustee. *Compl.* ¶¶ 13-15; *see also,* Exhibits D and E hereto. The *Mortgage* is currently held by the Defendant Wells Fargo as Trustee. *Complaint,* ¶ 6. Ocwen services the *Mortgage* on behalf of Wells Fargo as Trustee. *Compl.* ¶ 7.

## II.      DEFAULT, ACCELERATION AND FORECLOSURE.

Plaintiff failed to perform the covenants and agreements in the *Mortgage* by failing to make regular monthly payments beginning with the payment due September 1, 2010. *See Compl.* ¶ 29.

In 2010, the *Mortgage* and *Note* were accelerated, and a foreclosure sale was scheduled for June 27, 2011. *Compl.*¶ 30-31. That foreclosure sale was cancelled because the Plaintiff and Mr. Forrest filed a complaint in this Court on July 25, 2011, C.A. No. 11-cv-306, which was placed on the Special Master's docket. The Plaintiff voluntarily dismissed that claim on May 1, 2014, and on May 29, 2014, the Special Master disbursed $18,730.00 in use and occupancy fees to attorneys for the predecessors to the Defendants in this case. *See John Forrest and Kathryn M. Forrest v. Wells Fargo Bank as Trustee For Option One Mortgage Loan Trust 2007-2, Asset Backed Certificates, Series 2007-2*, et al., C.A. No. 11-cv-306 [ECF No. 18][2].

---

[2] The defendants in that prior case were Wells Fargo Bank as Trustee For Option One Mortgage Loan Trust 2007-2, Asset Backed Certificates, Series 2007-2; Sand Canyon Corporation; and American Home Mortgage Servicing, Inc.

Thereafter, the Defendants ultimately scheduled a foreclosure sale to occur on February 1, 2018.  *Compl.* ¶ 34. The Defendants have not yet conducted a foreclosure sale of the Plaintiff's property.

## III.   *COMPLAINT'S* ALLEGATIONS.

The *Complaint* alleges that "[a]ll the assignments of mortgage were void due to the fact that Option One did not own the Plaintiff's mortgage on May 22, 2009." *Compl.* ¶ 16.  To this point, the *Complaint* relies upon an affidavit of Dale Sugimoto, President of Sand Canyon, filed in the United States Bankruptcy Court for the Eastern District of Louisiana on March 18, 2009. *Compl.* ¶¶ 17-18.  In that affidavit, Mr. Sugimoto states that Sand Canyon "does not own any residential real estate mortgages."  *Compl.* ¶ 19.  The *Complaint* does not explain the circumstances behind this affidavit, or shed any light on its meaning.  That affidavit, however, does not contradict the Land Evidence Records, referenced in and attached to the *Complaint*, that shows that Option One, now known as Sand Canyon, was the mortgagee of the *Mortgage* on May 22, 2009.

The *Complaint* also alleges that the *Note* was never endorsed.  *Compl.* ¶ 28.  The *Complaint* alleges that the originator did not endorse the *Note*, but rather that AHMSI sent a copy of an allonge in July 2011 to the custodian of the trust, which included the *Note*.  *Compl.* ¶ 27.

The *Complaint* asserts that the *Note* was accelerated more than six years ago and is thus now unenforceable.  *Compl.* ¶ 33.  The Plaintiff admits that the last payment on the *Mortgage* was in 2010 and that the *Note* is due for September 1, 2010.  *Compl.* ¶ 29.  The *Mortgage* and the *Note* were accelerated in 2010 by AHMSI and Wells Fargo as Trustee, through counsel, scheduled a foreclosure sale for June 27, 2011.  *Compl.*, ¶ 31.  Because the *Note* was accelerated

more than six years ago, Plaintiff asserts that the *Note* cannot be enforced pursuant to *R.I. Gen. Laws* § 6A-118. *Compl.* ¶ 32-33.

It is noteworthy that the *Complaint* does <u>not</u> assert that the contractual provisions of the *Mortgage* cannot be enforced, only that the *Note* cannot be enforced. *See generally, Compl.*

The *Complaint* also baldly asserts that because Wells Fargo as Trustee is neither the mortgagee of the *Mortgage* (despite being contradicted by title) nor the owner of the *Note*, and because the *Note* was accelerated more than six years ago, the monthly mortgage statements and the payoff statements sent to the Plaintiff, through Ocwen, failed to comply with TILA and the RI-FDCPA and violated the covenant of good faith in the mortgage contract. *Compl.* ¶¶ 46, 48, 56, 63, 66, 77-78 and 87-88.

## IV.   CLAIMS ASSERTED.

Based on the above allegations, the *Complaint* makes the following claims against Defendants:

- Count I – Violations of the Truth in Lending Act for allegedly failing to send accurate monthly statements;

- Count II –  Violation of the Covenant of Good Faith and Fair Dealing;

- Count III – Injunctive Relief;

- Count IV – Violation of the Rhode Island Fair Debt Collection Practices Act; and

- Count V[3] – Violations of the Truth in Lending Act for allegedly failing to send an accurate payoff statement.

Plaintiff seeks reimbursement for her costs, fees, and expenses for bringing this action and statutory damages for claimed violations of the RI-FDCPA and TILA. *Compl.* ¶¶ 51, 58, 80, 91. Plaintiff also seeks injunctive relief against the foreclosure in Count III.

---

[3] In the *Complaint*, Count V, which begins on page 14, precedes Count IV, which begins on page 16.

For the reasons set forth below, the *Complaint's* factual allegations do not entitle Plaintiff to recover under any of the above enumerated causes of action against Defendants. Accordingly, Defendants are entitled to dismissal of Plaintiff's *Complaint*, in its entirety.

## STANDARD OF REVIEW

Under *Federal Rule of Civil Procedure* 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, a court must view a complaint in the light most favorable to the plaintiff, taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences. *See Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 18 (1st Cir. 2002); *Carreiro v. Rhodes Gill & Co.*, 68 F.3d 1443, 1446 (1st Cir. 1995); *Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 27 (1st Cir. 1994). However, the court need not take allegations as true if they are "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Rather, labels, conclusions, or a formulaic recitation of the elements of a cause of action will not do. *See Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir. 1989) (The court is not required to credit "bald assertions, unsupportable conclusions, and opprobrious epithets.") (citing *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)); *see also Twombly*, 550 U.S. at 555 (2007) (a plaintiff must provide "more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do").

Under this standard, a court should grant a defendant's motion to dismiss if the plaintiff's

"well-pleaded facts do not possess enough heft to show that plaintiff is entitled to relief." *Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008)).  A plaintiff must therefore allege facts in support of "each material element necessary to sustain recovery under some actionable legal theory." *Dartmouth Review*, 889 F.2d at 16 (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)).  Where it appears that a plaintiff has no cognizable claim and any attempts to amend would be futile, dismissal with prejudice is appropriate.  *See Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008) ("The complaint must allege a plausible entitlement to relief in order to survive a motion to dismiss.") (internal quotation marks and citation omitted).

## ARGUMENT

**I.      COUNT I, ALLEGING VIOLATIONS OF TILA'S MONTHLY STATEMENT REQUIREMENT, FAILS BECAUSE THE STATEMENTS WERE PERMISSIBLE AND FOR LACK OF SUFFICIENT ALLEGATIONS OF AN INJURY.**

In Count One, the *Complaint* alleges that Wells Fargo as Trustee violated TILA's requirement to send accurate monthly statements.  The *Complaint* asserts, in a conclusory manner, that certain fees on monthly statements for advertising costs, foreclosure fees, property inspection fees, and other fees related to the Plaintiff's default were inaccurate and therefore the monthly statements violated TILA.  *Compl*. ¶¶ 45-47.  The *Complaint* asserts that the addition of foreclosure and related expenses was inaccurate because (A) Wells Fargo as Trustee is not entitled to foreclose because it is not the owner of the *Note* or the mortgagee, and (B) the statute of limitations on the enforcement of the *Note*, which the Plaintiff asserts is six years, has run.  Because Wells Fargo as Trustee was allegedly prevented by law from foreclosing, the *Complaint* asserts Wells Fargo as Trustee violated TILA by including foreclosure and other similar charges in monthly statements of the Mortgage Account.  Defects in both theories (A) and (B) are discussed below, as is defect of failure to plead an injury.

A. **The Fees and Expenses That Wells Fargo as Trustee Included on the Monthly Statements Did Not Violate TILA Because Wells Fargo as Trustee Is Entitled to Foreclose as the Mortgagee.**

Plaintiff alleges that Wells Fargo as Trustee violated TILA by sending monthly statements that included foreclosure-related expenses.  Plaintiff alleges that Wells Fargo as Trustee cannot lawfully include these expenses because it is not the owner of the *Note* or the mortgagee.  The Plaintiff alleges that Wells Fargo as Trustee is not the mortgagee because the first assignor was not the owner of the *Note* at the time it assigned the *Mortgage*.  Plaintiff's claims have no basis in the law.

The Rhode Island Supreme Court has repeatedly held that an entity does not need to be the owner of the note to exercise the power of sale in the mortgage.  *Pimentel v. Deutsche Bank Nat'l Trust Co.*, 174 A.3d 740, 745, (R.I. 2017) (*citing Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069 (R.I. 2013)); *Leone v. Mortg Elec. Reg. Sys., Inc.*, 101 A.3d 869, 874 (R.I. 2014).  An entity need only be the mortgagee in order to foreclose.  *Id.*

This Court follows the holdings of the Rhode Island Supreme Court, repeatedly rejecting the same arguments that the Plaintiff is making in the instant case.  *See Sophin In v. Mortg. Elec. Registration Sys., Inc.*, 2015 WL 105775 (D.R.I. Jan. 7, 2015) (McConnell, J.) (argument that mortgagee lacked authority to foreclose because it was not the note-holder had "no basis in law"); *Era v. Morton Cmty. Bank*, 8 F. Supp. 3d 66, 74 (D.R.I. 2014) (finding authority to foreclose based on assignments of the mortgage, not on ownership of the note); *Clark v. Mortg. Elec. Registration Sys., Inc.*, 7 F. Supp. 3d 169, 182 (D.R.I. 2014) ("MERS and its assigns can institute foreclosure even where the foreclosing entity does not hold an interest in the note").  Therefore, it is irrelevant whether Wells Fargo as Trustee owns the *Note*.

In addition, the Rhode Island Supreme Court and this Court have rejected similar challenges to assignments executed by the mortgagees of record.  Consistent with the general rule precluding third-parties from challenging the validity of a contract, the Rhode Island Supreme Court, following the First Circuit Court of Appeals, has limited the standing of a homeowner to challenge assignments to instances where the assignments are "invalid, ineffective, or void." *Mruk v. Mortg. Elec. Registration Sys., Inc.*, 82 A.3d 527, 536 (R.I. 2013) ("[A] mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title.") (*quoting Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282, 291 (1st Cir. 2013)). "Specific to the mortgage context, a void mortgage assignment is one in which the putative assignor 'never properly held the mortgage and, thus, had no interest to assign.'" *Wilson v. HSBC Mortg. Servs.*, 744 F.3d 1, 10 (1st Cir 2014) (*quoting Culhane*, 708 F.3d at 291).

Here, Plaintiff fails to even allege that any assignments were "invalid, ineffective, or void."  *See generally, Compl.*  Instead, the *Complaint* refers to an affidavit of Dale Sugimoto, President of Sand Canyon, filed in the United States Bankruptcy Court for the Eastern District of Louisiana on March 18, 2009.  *Compl.* ¶¶ 17-18.  In that affidavit, Mr. Sugimoto states that Sand Canyon "does not own any residential real estate mortgages."  *Compl.* ¶ 19.  That affidavit does not contradict the Land Evidence Records (referenced in and attached to the *Complaint*) that shows Option One, now known as Sand Canyon, was the mortgagee of the *Mortgage* on May 22, 2009.

To the extent the Plaintiff argues that Sand Canyon, formerly known as Option One, did not have the authority to assign the *Mortgage* because it did not own the *Note* at the time the assignment was executed, that argument has been repeatedly rejected.  *See Culhane,* 708 F.3d at

291-293 (holding that mortgagee may assign its interest in property even if it does not own a beneficial interest in the promissory note, because the two are distinct interests that may be held by different parties); *Mruk, supra,* 82 A.3d at 537 (same); *see also Avedisian v. Select Portfolio Servicing, Inc.*, 2017 WL 6334123, at *5 (D.R.I. August 29, 2017) (Sullivan, M.J.) ("this Court has expressly rejected the proposition that a mortgage assignment was ineffective because the mortgage holder did not contemporaneously hold the note"), *adopted* 2017 WL 6343644 (D.R.I. Dec. 11, 2017).  Rather, in Rhode Island, "the holder of the legal title to the mortgage … always has acted as an agent of the owner of the equitable title" and has the authority to assign the mortgage.  *Mruk*, *supra,* 82 A.3d at 537 (*quoting Bucci, supra*, 68 A.3d at 1088).

In sum, the allegations of the *Complaint* and Exhibits A-E thereto affirmatively demonstrate that Wells Fargo as Trustee is the current mortgagee of the *Mortgage*.  The chain of transfers of the Mortgage was as follows:

- Ms. Forrest and Mr. Forrest executed the *Mortgage* in favor of Option One on November 3, 2006.  *See* <u>Exhibit B</u>.

- Sand Canyon (formerly known as Option One) assigned the *Mortgage* to AHMSI on May 22, 2009.  *See* <u>Exhibit C</u>.

- AHMSI assigned the Mortgage back to Sand Canyon on November 18, 2009.  *See* <u>Exhibit D</u>.

- Sand Canyon assigned the Mortgage to Wells Fargo as Trustee on November 18, 2009.  *See* <u>Exhibit E</u>.

The chain of transfers is complete.  The Plaintiff has not set forth any other facts that would challenge Wells Fargo as Trustee's status as mortgagee or its entitlement to exercise the power of sale.  Therefore, the Plaintiff has not alleged a plausible claim that the advertising costs, foreclosure fees, and other fees on the monthly statements related to the Plaintiff's default were inaccurate or in violation of TILA.

**B.     The *Complaint's* Allegation That the Monthly Statements Violate TILA Because a Statute of Limitations Expired Lacks Merit Because Wells Fargo as Trustee May Exercise the *Mortgage's* Power of Sale Within 35 Years of the Date of Recording of the *Mortgage*.**

Count I also alleges that because the Defendants accelerated the *Note* more than six years ago, the Defendants cannot bring an action to enforce the *Note*, pursuant to *R.I. Gen. Laws* § 6A-3-118.  *Compl.* ¶¶ 32-33. For this reason, Count I claims that the advertising costs, foreclosure fees, and other fees on the monthly statements related to the Plaintiff's default were inaccurate and violated TILA.  However, Wells Fargo as Trustee clearly did not violate TILA when adding advertising costs, foreclosure fees, and other fees, because the statute of limitations cited by the Plaintiff does not apply.  Wells Fargo as Trustee may exercise the power of sale within 35 years of the date of recording of the *Mortgage*.  Therefore, the fees that were related to a foreclosure did not violate the law.

Plaintiff (conveniently) applies the wrong statute of limitations.  If the Defendants filed a civil action on the *Mortgage*, such as a judicial foreclosure action, the applicable statute of limitations is contained in *R.I. Gen. Laws* § 9-1-17, which allows an action to be commenced within 20 years of the breach of a contract under seal.  *See Wyss v. Wyss*, C.A. No. WC-2013-0024, 2014 WL 2991600, at *7 (R.I. Super. Ct. June 26, 2014) (Rodgers, J.).

However, no statute of limitations applies to an exercise of the power of sale, which is governed only by the statute of repose at *R.I. Gen. Laws* § 34-26-7.  Pursuant to that section, a mortgagee may exercise the power of sale within "thirty-five (35) years from the date of recording of the mortgage."  *R.I. Gen. Laws* § 34-26-7; *see also Wyss*, 2014 WL 2991600, at *6 ("As the statutory power of sale is not subject to the twenty-year statute of limitations set forth in

§ 9-1-17, the only temporal limitation on a statutory power of sale, then, is the fifty-year[4] statute

of repose set forth in § 34-26-7.").

Here, the *Mortgage* (signed by Plaintiff) was recorded on November 8, 2006.  Pursuant to

the statute of repose, the Defendants may exercise the power of sale on any date prior to

November 8, 2041.  Thus, Plaintiff's contention that some limitations period has elapsed lacks

merit.  Therefore the Plaintiff has not set forth a plausible claim to relief under TILA.

### C.     Count I Also Fails Because The Plaintiff Has Not Alleged Concrete Injury-In-Fact Required to Establish a Prima Facie TILA Claim.

In order to have standing to bring a claim for a statutory violation of TILA as in Count I,

the Plaintiff must allege a concrete injury-in-fact directly caused by the alleged statutory

violations.  This requires more than the costs, expenses, and attorney's fees incurred in pursuing

the statutory claims that the Plaintiff alleges in the *Complaint.  Compl.* ¶ 51.

The Supreme Court of the United States has required allegations of a concrete injury to

establish standing to pursue a violation of consumer protection statutes, such as TILA.  In

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549-50 (2016), the plaintiff claimed that information

listed on Spokeo's website was inaccurate and violated the Fair Credit Reporting Act ("FCRA").

The plaintiff claimed statutory damages for Spokeo's alleged violation of the FCRA.  The

Supreme Court analyzed the plaintiff's standing to assert the claim under the "actual cases and

controversies" requirement of Article III of the United States Constitution.  *Id*. at 1547.  The

Supreme Court reversed the Ninth Circuit Court of Appeal's holding that the "alleged violations

of [plaintiff's] statutory rights [were] sufficient to satisfy the injury-in-fact requirement of Article

III."  *Id*. at 1547.  The Supreme Court required the plaintiff to show an injury-in-fact that is

---

[4] The statute of repose was reduced from 50 years to 35 years by amendment in 2015. *See* Pub. Laws 2015 ch. 106 §1.

"concrete and particularized."  *Id.* at 1548.  A concrete injury is one that is real, one that actually exists, including the risk of real harm.  *Id.* at 1548-1549.  "Article III standing requires a concrete injury even in the context of a statutory violation.  For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Id.* at 1549.  The Court applied this analysis by remanding the case back to the Ninth Circuit, and noted, "[a] violation of one of the FCRA's procedural requirements may result in no harm."  *Id.* at 1550.

The *Spokeo* analysis has been applied to dismiss claims brought under other consumer protection statutes where the plaintiff-consumer did not suffer any real injury-in-fact.  Notably, in *Pemental v. Bank of N.Y. Mellon,* 2017 WL 3279015 (D.R.I. May 10, 2017) (Sullivan, M.J.), *adopted* 2017 WL 3278872 (D.R.I. Aug. 1, 2017), the Court applied the *Spokeo* analysis to dismiss claims under TILA and the federal Fair Debt Collection Practices Act ("FDCPA").  *Id.* at *7 (plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III . . . . [N]ot all inaccuracies cause harm or present any material risk of harm.") (*citing Spokeo*, 136 S. Ct. at 1549-50); *Davidson v. PNC Bank, N.A.*, 2016 WL 7179371, *1 n.1 (S.D. Ind. Dec. 9, 2016) (dismissing TILA claim alleging potentially inaccurate mortgage payoff statement because plaintiff failed to allege actual injury).

In *Pemental*, the plaintiff claimed that he had incurred "attorneys' fees, costs and expenses"[5] in asserting the TILA claim. 2017 WL 3279015 at *8.  The Court found that

> While these would be recoverable if there has been a TILA
> violation, 15 U.S.C. § 1640(a)(3), they are not a substitute for the
> injury-in-fact required by *Spokeo*.  If they were, they would
> subsume the injury-in-fact requirement since, apart from pro se

---

[5] The damages claimed by the plaintiff in *Pemental*, which the Honorable Magistrate Judge Sullivan found legally insufficient, are nearly identical to the damages claimed in this case.  The plaintiff in *Pemental* was represented by the same attorney as the Plaintiff in this case.

> claims, every TILA complaint requires the expenditure of attorneys' fees.

2017 WL 3279015 at *8. The plaintiff also claimed damages because the lender added "improper legal fees, expenses and costs" at some unspecified point in time.  2017 WL 3279015 at *8 n.15. The Court found this claimed damage was not causally connected to the allegedly inaccurate statements in the year prior to the pleading of the TILA claim.  *Id.*

Here, just as in *Pemental*, the only damages the Plaintiff claims are the attorneys' fees, costs, and expenses she incurred in asserting her TILA claim.  In Count I, the Plaintiff claims to have incurred the following "actual damages, costs and legal fees" related to the TILA claim:

- Gasoline and mileage costs to visit her attorney on at least two occasions;
- Postage, copying and stationary/envelope costs; and,
- Attorney fees and costs for prosecution of the action.

*Compl. ¶ 51.* These claimed damages amount to nothing more than the costs of pursuing the claimed violation of TILA. These allegations are insufficient to plead a concrete injury-in-fact. Therefore, pursuant to the Supreme Court's analysis in *Spokeo*, the Plaintiff has failed to establish standing to pursue the violation of TILA in Count I.

Therefore the Plaintiff has failed to state a claim in Count I, and it should be dismissed.

## II. COUNT II FAILS TO ALLEGE A BREACH OF THE COVENANT OF GOOD FAITH BECAUSE ALL CLAIMS THEREIN ARE BASED ON THE ERRONEOUS THEORIES ADDRESSED IN SECTIONS I.A AND I.B, *SUPRA*.

In Count II, Plaintiff claims that "Wells Fargo [as Trustee] violated the covenant of good faith and dealing by scheduling a foreclosure sale in violation of the terms of the mortgage by seeking to exercise the statutory power of sale despite not owning the note and the mortgage and despite not having the right to enforce the note due to the fact that the mortgage loan was accelerated more than six years ago." *Compl. ¶ 56.*

However, as explained more fully in §§ I.A and I.B, *supra*, the Plaintiff's claims are not legally sufficient. Wells Fargo as Trustee is the mortgagee of the *Mortgage* and the Plaintiff lacks standing to challenge the assignments of it.  Further, the exercise of the power of sale is well within the 35 year limitations period.  Therefore, Count II is an unsupported claim and should be dismissed.

III.    **COUNT III FAILS TO ALLEGE ENTITLEMENT TO INJUNCTIVE RELIEF AS THE PLAINTIFF CANNOT SHOW A SUBSTANTIAL LIKELIHOOD OF SUCCESS FOR REASONS DISCUSSED *SUPRA*.**

In Count III, the Plaintiff seeks to enjoin the foreclosure.  Plaintiff claims she has a substantial likelihood of success because "[t]he lack of an assignment of the mortgage to Wells Fargo [as Trustee], the lack of an endorsement of the note to Wells Fargo [as Trustee] and the passage of six years since the acceleration of the mortgage loan renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability." *Compl.* ¶ 63.

However, for the reasons explained in §§ I.A and I.B, *supra*, these allegations fail to establish a substantial likelihood of success.  The allegations of the *Complaint* and Exhibits A-E thereto demonstrate that Wells Fargo as Trustee is the mortgagee of the *Mortgage* and has the contractual right to exercise the power of sale.  The exercise of the power of sale is well within the 35 year limitations period.  Thus, Plaintiff cannot establish a substantial likelihood of success on the merits and Count III should be dismissed.

IV.    **COUNT IV FAILS TO ALLEGE PLAUSIBLE FACTS OR ACTUAL DAMAGES REQUIRED TO SUPPORT A VIOLATION OF THE RI-FDCPA.**

In Count IV[6], the Plaintiff alleges a violation of the RI-FDCPA by Ocwen.  Plaintiff baldly states that Ocwen "committed several violations of the RI-FDCPA", used "multiple unfair

---

[6] As noted above, Count IV comes after Count V in the *Complaint*.

and unconscionable means", and "by using false deceptive and misleading representations or means". *See Complaint*, ¶¶ 83, 84-84[7].  Plaintiff nowhere reveals the referenced representations or means are. *Id.*  Instead, Plaintiff alleges that Ocwen's statements violated the RI-FDCPA "for the reasons as alleged previously in this complaint." *Compl.* ¶ 87.  Plaintiff also alleges that Ocwen violated the RI-FDCPA "by threatening to take an action that could not be legally taken, namely that it could exercise the statutory power of sale and conduct a foreclosure sale of the plaintiff's home." *Compl.* ¶ 88.

In other words, the RI-FDCPA claim is once again based on the erroneous theories that Wells Fargo as Trustee is not entitled to foreclose because it is not the mortgagee and because more than six years have elapsed since the acceleration in 2011. These legal theories cannot support an RI-FDCPA claim for the same reasons explained in §§ I.A and I.B, *supra*.  The RI-FDCPA claim should be dismissed.

In the alternative, Count IV can also be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rather than allege facts, the Plaintiff claims in cursory fashion that Ocwen violated the RI-FDCPA "for the reasons alleged in this complaint." *Compl.* ¶ 87.  These allegations leave the Defendants to guess what the factual basis of the claim really is.  Plaintiff has merely alleged "labels and conclusions" that are devoid of any factual basis, and has failed to meet the pleading standard set forth in *Twombly*.

Further, the Plaintiff has not pleaded a concrete injury-in-fact as required to establish standing to pursue a violation of the RI-FDCPA.  As explained in § I.C, *supra*, pursuant to *Spokeo*, the Plaintiff must allege more than that costs, fees, and expenses of pursuing the

---

[7] There are two adjacent paragraphs numbered 84.

violation were incurred in order to establish standing under Article III.  The Plaintiff's claim of damages attributable to violations of the RI-FDCPA also fails to state any real injury-in-fact and suffers the same fate as her TILA claims.  Regardless of whether the claim arises under state law or federal law, the Plaintiff must satisfy the standing requirements of Article III before invoking this Court's jurisdiction.  *See Hagy v. Demers & Adams*, 882 F.3d 616, 624, (6th Cir. 2018) (dismissing federal and state claims for failing to plead actual injury-in-fact as defined in *Spokeo*).

Pemental applied the *Spokeo* analysis of injury-in-fact to the plaintiff's claims under the federal FDCPA, which are almost identical to RI-FDCPA claims.  "Because the wording of RI-FDCPA mirrors the federal [FDCPA], this Court has held that RI-FDCPA may be construed by reference to interpretations of the federal statute." *Avedisian v. Select Portfolio Servicing, Inc.*, 2017 WL 6334123, at *7 (D.R.I. Aug. 29, 2017) (Sullivan, M.J.), *adopted*, 2017 WL 6343644 (D.R.I. Dec. 11, 2017); *Laccinole v. Assad*, 2016 WL 868511, at *7 (D.R.I. Mar. 7, 2016). Vague or conclusory allegations that a consumer has been charged improper fees, without explaining what those fees are or why they are improper, do not allege a legally sufficient cause of action under the federal FDCPA, and should likewise be deemed insufficient under the RI-FDCPA.  *See Pemental*, 2017 WL 3279015, at *8.  The FDCPA claims were dismissed in *Pemental* for lack of standing where the plaintiff alleged damages nearly identical to the damages alleged by Ms. Forrest in the present case.  Here, Ms. Forrest alleges the following damages arose from the alleged RI-FDCPA violations:

- Gasoline and mileage costs to visit her attorney on at least two occasions;
- Cell phone usage to call her attorney;
- Electricity to recharge her cell phone for calls with her attorney;
- Attorney fees and costs for prosecution of the action;

- Emotional damages for embarrassment and humiliation from the advertising of a foreclosure sale of her home; and,
- *Mortgage* loan account charged "unreasonable fees and costs" for uncorroborated and unreasonable and unnecessary property inspections and improper legal fees and costs.

*Compl.* ¶ 91.  Like *Pemental*, these types of damages relate only to the costs and expenses of bringing the claim and do not satisfy the requirement of concrete and particularized injury. Further, the claim of "improper legal fees, expenses, and costs" is too vague to satisfy the appropriate pleading standard. *See Pemental*, 2017 WL 3279015, at *8 ("As crafted, it is impossible for the Court (or the named Defendants) to ascertain what is the real FDCPA claim or what the actual FDCPA injury might be.")  As to the allegations of emotional damages, Ms. Forrest alleges that these claims relate to the advertising of a foreclosure, not to any alleged RI-FDCPA violations, and thus do not factor into the injury-in-fact analysis.

Therefore, the Plaintiff failed to set forth an RI-FDCPA claim.  Count IV should be dismissed.

**V.     COUNT V FAILS TO STATE AN INDEPENDENT TILA CLAIM BASED ON AN INACCURATE PAYOFF STATEMENT BECAUSE THE FEES AND EXPENSES WERE PROPERLY INCLUDED IN THE PAYOFF STATEMENT AND THE PLAINTIFF HAS NOT SUFFERED ACTUAL DAMAGES.**

In Count V, the Plaintiff again alleges a violation of TILA, this time for failure to send an accurate payoff statement.  The Plaintiff alleges that Ocwen sent a payoff statement on or about May 1, 2017.  *Compl.* ¶ 75.  While the Plaintiff states in conclusory fashion that several charges were inaccurate (*see Compl.* ¶ 76), the Plaintiff does not explain any reason why the charges were inaccurate.  The Plaintiff only alleges that the charges on the payoff statement were inaccurate "for the reasons alleged in this complaint" and "that the charges were not legally incurred as indicated in this complaint."  *Id.* at ¶¶ 77-78.  The Defendants are once again forced to guess that those reasons are the same erroneous theories that Wells Fargo is not entitled to

foreclose because it is not the mortgagee and because more than six years have elapsed since the acceleration in 2011.  These legal theories fail for the reasons set forth in §§ I.A and I.B, *supra*, and therefore, the Plaintiff failed to state a claim for a violation of TILA.

In the alternative, the Defendants argue that Count V should be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rather than allege facts, the Plaintiff claims in cursory fashion that the basis of the statutory violations are "for the reasons alleged in this complaint," *see, e.g. Complaint*, ¶ 76.  These allegations leave the Defendants to guess what the factual basis of the claim really is.  The Plaintiff has merely alleged "labels and conclusions" that are devoid of any factual basis, and has failed to meet the pleading standard set forth in *Twombly*.

Further, in Count V, Ms. Forrest fails to allege that she suffered a concrete injury-in-fact due to the allegedly inaccurate payoff statement.  She does not allege that she attempted to make a payment in response to the allegedly inaccurate payoff statement.  In paragraph 80 of the *Complaint*, she alleges identical damages as alleged in Count IV, which are merely the costs, fees, and expenses of pursuing the claim.  She also claims that her *Mortgage* loan account has been "charged improper charges."  *Id.* at ¶ 80.

The damages that Ms. Forrest alleges from her TILA claims are almost identical to the damages found legally insufficient in the TILA claim in *Pemental*.  These so-called damages are only the costs and expenses involved in bringing this action.  They do not satisfy the actual injury-in-fact requirement as set forth in *Spokeo,* 136 S. Ct. at 1549-50.  Ms. Forrest does allege that "improper charges" have been added to her *Mortgage* loan, however, the *Complaint* is devoid of any detail of what these charges are or how the alleged failure to send accurate monthly statements caused those charges.  *See Pemental*, 2017 WL 3279015 at *8 n.15 (holding

"improper legal fees, expenses and costs" added to the mortgage account at some unspecified point in time not plausibly connected to alleged TILA violations).

For all of these numerous reasons, Count V should be dismissed.

## CONCLUSION

None of Plaintiff's claims allege a legally-sufficient cause of action.  Each claim is based on the Plaintiff's erroneous theories that Wells Fargo as Trustee is not entitled to foreclose and that a six-year statute of limitations has lapsed.  The Defendants respectfully request that the Court dismiss the Plaintiff's *Complaint* in its entirety and enter judgment in favor of Defendants.

DEFENDANTS,

Wells Fargo Bank, National Association as Trustee for Option One Mortgage Loan Trust 2007-2, Asset-Backed Certificates, Series 2007-2 and Ocwen Loan Servicing, LLC,

By their attorneys,

Locke Lord LLP,

/s/Krystle Tadesse
Joseph A. Farside, Jr. (#7559)
Krystle Tadesse (#7944)
Jeffrey C. Ankrom (#7663)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI  02903
(401) 274-9200
(401) 276-6611 (Fax)
joseph.farside@lockelord.com
krystle.tadesse@lockelord.com
jeffrey.ankrom@lockelord.com

Dated:  April 20, 2018

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on the 20th day of April, 2018, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

/s/Krystle Tadesse